THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIM KEISTER<br>7111 Woodmont Ave. Apt. 903<br>Chevy Chase, MD 20815<br>   Plaintiff,<br><br>   v.<br><br>AMERICAN ASSOCIATION OF<br> RETIRED PERSONS, INC<br>601 E Street NW<br>Washington, D.C. 20049<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1. Plaintiff, Kim Keister ("Plaintiff" or "Mr. Keister"), by and through his undersigned counsel, initiates this action to seek redress against Defendant American Association of Retired Persons or AARP, Inc. ("AARP" or "Defendant") for misrepresentations made to him to interfere with his rights under ERISA in connection with his claims for long-term disability (LTD) benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

### JURISDICTION AND VENUE

2. This action arises under the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. § 1132(a)(3) and § 1140. This Court has jurisdiction under 29 U.S.C. § 1132(e)(1).

3. Venue is proper pursuant to the provisions of 29 U.S.C. § 1132(e)(2) because AARP is located in the District of Columbia, and the conduct occurred in the District of Columbia.

4. This case is related to *Keister v. AARP Benefits Committee*, *et al*, 18-cv-2385, which as of the time of this filing is not subject to a final appealable ruling from the Court on the Motions for Summary Judgment that have been pending. *See* Docket Number 26 in that case.

**PARTIES**

5. Plaintiff Kim Keister is a resident of the State of Maryland and, at all relevant times, worked in the District of Columbia.

6. Defendant AARP is located in the District of Columbia where it administers an LTD plan.

7. The LTD plan is an employee welfare benefit plan created pursuant to Section 3(1) of ERISA, 29 U.S.C. § 1002(1) and offered by AARP, for the benefit of its employees.

8. At all relevant times, Mr. Keister was an employee of AARP, Inc., and was a participant in the LTD plan.

9. The LTD plan is underwritten by Aetna.

10. Through a jointly issued "Booklet-Certificate," AARP Benefits Committee empowers Aetna to make a number of determinations in administration of disability claims that impact LTD Plan beneficiaries, including when eligibility for LTD benefits start and end.

**FACTS SUPPORTING PLAINTIFF'S CLAIM**

11. On or around April, 2004, Mr. Keister was employed by AARP as a news/policy executive editor.

12. The Disability Plan was offered to Mr. Keister by AARP in the District of Columbia as a benefit of his employment.

13. Mr. Keister applied for benefits under the Disability Plan in the District of Columbia.

14. Under the terms of the Disability Plan, benefits will be paid once the individual meets the Disability Plan's Long-Term Disability Benefit Eligibility test.

15. Under the Long-Term Disability Benefit Eligibility test, an individual will be considered eligible under the Disability Plan on the first day they are disabled as a direct result of a significant change in their physical or mental conditions, and:

    a) The individual is covered by the plan at the time they become disabled;
    b) They are under the regular care of a physician; and
    c) They must be disabled by an illness, injury, or disabling pregnancy-related condition as determined by Aetna.

16. The Disability Plan states that an individual is "disabled" when:
    a) From the date the individual is first disabled until benefits have been paid for twenty-four (24) months, that individual
        i. Cannot perform the material duties of his/her own occupation solely because of an illness, injury or disabling pregnancy-related condition; and
        ii. His/her earnings are 80% or less than adjusted pre-disability earnings; or
    b) After the first twenty-four (24) months of benefits have been paid, the individual is unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

17. On August 19, 2016, Mr. Keister suffered a stroke, spending two (2) nights in the hospital under observation.

18. At the time of his stroke, August 19, 2016, Mr. Keister was an employee of AARP and covered under the Disability Plan.

19. The damage to Mr. Keister's brain caused by the stroke resulted in his significant loss of language skills. He experienced aphasia, preventing him from understanding simple sentences from beginning to end and causing him to consistently make word-choice and grammatical mistakes.

20. On August 24, 2016, Mr. Keister began seeing a speech pathologist on a twice-weekly basis.

21. On January 11, 2017, Mr. Keister attempted to return to work, but his cognitive skills had not returned to their pre-stroke functionality.

22. Returning to work caused serious regression in Mr. Keister's progress. He was unable to focus from one task to another, he would become confused easily in conversations, and his speech and word-selection continued to suffer. His sleep pattern was disrupted, worsening his symptoms.

23. On February 3, 2017, Mr. Keister requested medical leave and applied for short term disability.

24. On March 8, 2017, Mr. Keister was examined by Neurologist Dr. Jason Freeman. At this appointment, Dr. Freeman stated that Mr. Keister continued to have cognitive difficulties as a result of his stroke.

25. On April 4, 2017, Dr. Freemen completed an Attending Provider Statement, where he noted that Mr. Keister continued to struggle with speech and language abilities.

26. On April 21, 2017, Mr. Keister was approved by Aetna for short term disability benefits.

27. On June 19, 2017, Mr. Keister was examined by Neurologist Dr. Richard Restack. Dr. Restack stated that Mr. Keister was experiencing language difficulties.

28. On July 18, 2017, Aetna denied Mr. Keister claim for LTD benefits, claiming it lacked sufficient evidence to prove Mr. Keister was unable to work. Mr. Keister was granted 180 days to request an appeal of his claim denial.

29. Mr. Keister's short term disability ended on August 2, 2017.

30. On September 08, 2017, Speech and language therapist Ms. Sonia Oh noted that Mr. Keister continued to report problems with organizing and synthesizing information in conversations, and concentration problems.

31. Mr. Keister continued to attend speech therapy training through December 7, 2017.

32. Mr. Keister continues to suffer from aphasia that resulted from the stroke he suffered in August, 2016.

33. Since his stroke, Mr. Keister remained under the consistent care of numerous medical professionals, including Dr. Restack, Dr. Freeman, and Ms. Oh.

34. Due to the aphasia and other cognitive injuries and limitations that resulted from his stroke, Mr. Keister is unable to perform the material duties of his position as an executive editor, and is thus disabled under the Disability Plan.

35. In the spring of 2017 Mr. Keister was presented with a severance agreement to consider.

36. Without assistance of counsel, Plaintiff had several lengthy conversations with AARP human resource representatives during which he sought clarification of his rights continuing to pursue his benefits under the LTD plan while deliberating the severance agreement.

37. Defendant human resources representatives were fully aware of Plaintiff medical condition and cognitive limitations when he was presented with the severance agreement.

38. At no point was there the slightest indication or reference by the human resources representatives that LTD benefits would be forfeited if Plaintiff signed the severance agreement.

39. Defendant, fiduciary of the LTD plan and fully aware that Plaintiff was seeking to secure his LTD benefits, had an obligation to inform Plaintiff of the impact of signing the severance agreement on his continued pursuit of his LTD benefits, which at that point he needed to appeal.

40. On June 13, 2018, Aetna denied Mr. Keister's appeal and upheld its initial denial of benefits under the Disability Plan.

41. Mr. Keister has complied with all contractual requirements of the Disability Plan, including but not limited to the submission of sufficient medical proof of his ongoing and disabling medical conditions.

42. Mr. Keister has exhausted all administrative remedies and was advised by AETNA of his rights to pursue litigation in the letter denying her appeal.

43. Mr. Keister filed his lawsuit against AETNA and the AARP Benefits Committee on October 16, 2018.

44. However, after filing his law suit to enforce his rights under the LTD plan, the AARP Benefits Committee and AETNA filed for summary judgment, taking the position that when Mr. Keister signed the severance agreement, he waived his rights under ERISA.

## **MISRPRESENTATION IN VIOLATION OF ERISA**

45. All prior paragraphs are incorporated by reference, as if fully set forth herein.

46. AARP representatives who were working with Mr. Keister at the time misrepresented to Mr. Keister the effect of the severance agreement on his ERISA rights.

47. The misrepresentation was made knowing that AARP would consider Mr. Keister's rights under the LTD plan to have been waived.

48. Mr. Keister would not have signed the severance agreement as presented knowing that it would impact his ability to secure his LTD benefits, as he had discussed how securing those benefits would also allow him to secure retiree medical benefits through the AARP plan.

49. AARP mislead Mr. Keister knowing his intentions to secure his benefits and without informing him how his rights would be negatively impacted if he signed the severance agreement, despite his numerous inquiries.

50. Defendant's conduct violated ERISA inasmuch as it did not tell Mr. Keister the truth when he made his inquiry, and therefore breached its fiduciary duty to do so.

## **VIOLATION OF ERISA ANTI-INTERFERENCE CLAIM**

51. AARP human resource representative intentionally convinced Mr. Keister into signing the severance agreement, so that they could cut off his benefits and ensure that he would not receive retiree medical benefits.

52. AARP human resource representatives intentionally interfered with Mr. Keister's rights under the LTD plan by convincing him that he would not lose his rights to enforce the terms of the LTD plan under ERISA, 29 U.S.C. § 1132(a)(1)(B).

53. The conduct of the human resource representatives violates ERISA, 29 U.S.C. §1140 because AARP interfered with Plaintiff's rights to secure retiree medical benefits.

54. Mr. Keister has been forced to and will continue to expend attorney's fees to secure payment of the claims and is entitled to recover those fees pursuant to 29 U.S.C. § 1132(g).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kim Keister prays judgment against Defendant, as follows:

1. For an order that AARP breached its fiduciary duty to tell Mr. Keister the truth when responding to his inquiry about his ERISA benefits under the LTD plan;
2. For an order that Mr. Keister is entitled to the equitable remedy to surcharge;
3. For reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g);
4. For costs of suit incurred herein; and
5. For such other relief as the Court deems just and proper.

DATED: September 30, 2019

          /s/Denise M. Clark
Denise M. Clark (420480)
Clark Law Group, PLLC
1100 Connecticut Ave., N.W, Suite 920
Washington, D.C. 20036
Telephone: (202) 293-0015
Fax: (202) 293-0115
dmclark@benefitcounsel.com