UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KIM KEISTER, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | Civil Action No. 19-2935 (FYP) |
| AMERICAN ASSOCIATION OF RETIRED PERSONS, INC., | ) ) ) ) | |
| *Defendant*. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Kim Keister was employed by the American Association of Retired Persons, Inc. ("AARP") before suffering a stroke that required him to stop working due to lost language and cognitive skills. Keister was awarded short-term disability payments, but he was denied long-term disability benefits. When separating from AARP, Keister signed a Severance Agreement that barred him from pursuing any claim for long-term disability benefits. Keister brings this lawsuit, arguing that AARP made misrepresentations about the Severance Agreement and interfered with his right to seek additional disability benefits, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. *See generally* ECF No. 1 (Complaint). Before this Court is Defendant's Motion to Dismiss. *See* ECF No. 6 (Defendant's Motion).[1] AARP argues that Keister's claims are barred by *res judicata* because he brought

---

[1] Plaintiff has filed an Opposition, *see* ECF No. 8, and Defendant filed a Reply, *see* ECF No. 9. The Court notes that Plaintiff filed his Opposition late. Defendant filed its Motion to Dismiss on November 20, 2019. *See* Def. Mot. A response to a motion must be filed within 14 days of the date of service. *See* LCvR 7(b). Plaintiff's Opposition was thus due on December 4, 2019, but Plaintiff did not file his Opposition until December 5, 2019. *See* Pl. Opp. Because the Court prefers to decide cases on their merits, the Court accepts the Opposition for filing. The Court also has considered Plaintiff's and Defendant's Supplemental Memoranda concerning the appeal of a related case. *See* ECF No. 11 (Defendant's Supplemental Memorandum); ECF No. 12 (Plaintiff's Supplemental Memorandum).

claims based on the same facts in a prior lawsuit.  For the reasons explained below, the Court agrees that Keister's claims are barred by the doctrines of claim preclusion and issue preclusion.  The Court therefore will grant Defendant's Motion to Dismiss.

## BACKGROUND

AARP hired Keister as a news and policy executive editor around April 2004.  *See* Compl., ¶ 11.  Keister was covered by the company's Long-Term Disability Insurance Plan.  *Id.*, ¶¶ 12–13.  On August 19, 2016, Keister suffered a stroke and went on medical leave.  *Id.*, ¶¶ 17–21.  The stroke caused Keister to suffer a significant loss of language and cognitive skills.  *Id.*, ¶¶ 19–21.  On January 11, 2017, Keister attempted to return to work, but his cognitive skills had not yet returned to pre-stroke functionality.  *Id.*, ¶ 21.  Keister requested medical leave and applied for short-term disability benefits on February 3, 2017.  *Id.*, ¶ 23.

On April 21, 2017, Aetna Life Insurance Co. ("Aetna") approved Keister for short-term disability benefits.  *Id.*, ¶ 26.  The short-term disability benefits ended on August 2, 2017.  *Id.*, ¶ 29.  Keister also applied for long-term disability benefits but the claim was denied on July 18, 2017.  *Id.*, ¶ 28.  Keister appealed the denial of his claim, but Aetna affirmed its decision on June 13, 2018.  *Id.*, ¶ 40.

Meanwhile, after Keister's initial application for long-term disability benefits had been denied but before he filed his appeal, AARP offered Keister a Severance Agreement.  *Id.*, ¶ 35; s*ee* ECF No. 6-2 (Severance Agreement, Ex. A to Def. Mot.).  Under the Severance Agreement, Keister would receive severance pay in exchange for a general release of claims ("Release").  *See* Severance Agreement, ¶ 2.  The Release provided

> In consideration of the promises and benefits contained in this Agreement . . . you hereby fully and forever waive, discharge, and release AARP . . . from any and all claims for damages, personal injuries, discrimination, retaliation, reinstatement, or other relief

> that you may have . . . based upon your employment, separation, and/or any event or transaction that occurred prior to your signing this Agreement.

*Id.* The Release specified that it encompassed "any claims of race, sex, age, and other prohibited discrimination, and *any other legal or equitable claim of any kind*, whether based upon statute, contract, tort, common law, ordinance, regulation or public policy . . . ." *Id.* (emphasis added). The Release further provided:

> It is expressly agreed and understood that this Agreement constitutes a GENERAL RELEASE. You understand that you are releasing claims that you may not know about. This is your knowing and voluntary intent, even though you recognize that someday you might learn that some or all of the facts you currently believe to be true are untrue and even though you might then regret having signed this release. It is further agreed that this consideration shall settle and compromise any claims you have, or may have, whether known or unknown, that existed prior to the date of your signature.

*Id.*[2] Keister signed the Severance Agreement on September 27, 2017. *See id.* at 5.

## I.     Prior Litigation

On October 16, 2018, Keister filed a lawsuit against Aetna and AARP Benefits Committee ("AARP Benefits"), a wholly owned subsidiary operated by AARP, claiming that those defendants wrongfully denied his claim for benefits under the Long-Term Disability Insurance Plan, in contravention of ERISA. *See Keister v. AARP Benefits Committee*, 410 F.

---

[2] Further, the Severance Agreement provided that, by signing, Keister "acknowledge[d] that the provisions of this Agreement constitute the entire agreement on the matters addressed and that they supersede all prior agreements or understandings with regard to such matters." *Id.*, ¶ 13. A separate paragraph entitled "Knowing & Voluntary Agreement" states that Keister "affirm[ed]" that he had

> not relied upon any representation or statement, written or oral, not set forth in this Agreement; that no other promise or agreement of any kind has been made to or with [Keister] by any person or entity whatsoever to cause [him] to execute this Agreement; . . . and that [he] fully understand[s] the meaning of this Agreement, which is that it constitutes a complete General Release.

*Id.*, ¶ 14.

Supp. 3d 244, 248 (D.D.C. 2019) *(Keister I)*.  In that case, AARP Benefits filed a motion for summary judgment on December 10, 2018, arguing that Keister was barred from bringing the lawsuit because he expressly waived his claim for benefits when he signed the Severance Agreement.  *See id.* at 249.  Aetna filed its own motion for summary judgment on January 23, 2019, making the same argument.  *See id.*

On September 30, 2019, the court in *Keister I* entered an order granting both Motions for Summary Judgment.  *See id.* at 261.  The court issued a Memorandum Opinion laying out its reasoning on October 7, 2019.  *See generally id.*  The court stated that "by signing the separation agreement, Keister waived his right to bring [his] claim for long-term disability benefits, which means that his case cannot proceed as a matter of law."  *Id.* at 247.  The court determined that the Release in the Severance Agreement was "facially unambiguous with respect to the scope of its coverage," *id.* at 258, and there was "no evidence of fraudulent misrepresentation," *id.* at 261.

Keister appealed the decision in *Keister I*, and the D.C. Circuit affirmed the judgment on February 23, 2021.  *See generally Keister v. AARP Benefits Committee*, 839 Fed. App'x 559 (D.C. Cir. 2021).  The Court of Appeals held that "the district court correctly concluded the release was unambiguous."  *Id.* at 560.  The court further noted, "[i]t's hard to imagine how the contract could be any clearer."  *Id.*

**II.     Instant Case**

After the court issued its Order in *Keister I*, but before the docketing of the Memorandum Opinion, Keister filed the instant lawsuit against AARP on October 1, 2019.  *See generally* Compl.  Keister claims that AARP violated ERISA by (1) misrepresenting the effect of the Severance Agreement on his claim for long-term disability benefits; and (2) intentionally

4

interfering with his right to claim benefits.[3]  *See id.*, ¶¶ 46, 51–52.  Keister alleges that AARP human-resources representatives were aware of his medical condition and limitations when he was presented with the Severance Agreement, and they gave no indication that his claim for benefits would be forfeited if he signed the agreement.  *See id.*, ¶¶ 37–38.  Keister further claims that AARP breached its fiduciary duty to tell Keister the truth about how the Severance Agreement would affect his benefits under the Disability Plan.  *See id.*, ¶ 50.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting "plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

---

[3]  Plaintiff alleges a violation of 29 U.S.C. § 1140, which states "[i]t shall be unlawful for any person to . . . interfer[e] with the attainment of any right to which such participant may become entitled under the plan."

Case 1:19-cv-02935-FYP   Document 14   Filed 12/09/21   Page 6 of 14

## ANALYSIS

AARP argues that Keister's claims are barred by both claim preclusion and issue preclusion under the doctrine of *res judicata*. *See* Def. Mot. at 1. The doctrine of "res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).

### I. Claim Preclusion

Claim preclusion operates as a bar when a prior case "(1) involve[d] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final judgment on the merits, (4) by a court of competent jurisdiction." *Middleton v. Dep't of Labor*, 318 F. Supp. 3d 81, 86 (D.D.C. 2018) (quoting *Smalls v. United States*, 471 F.3d 186, 196 (D.C. Cir. 2006)). Whether a claim involves the same cause of action depends on "whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). To make this determination, the Court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (citation omitted). A final decision on the merits "prohibits any future cases arising from 'the same nucleus of facts,' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 161 (D.D.C. 2004) (quoting *Page*, 729 F.2d at 820). Claim preclusion therefore prevents not only relitigating the same claims, but also "any claim that might have been raised in the first proceeding." *Ponder v. Chase Home*

*Fin., LLC*, 865 F. Supp. 2d 13, 16–17 (D.D.C. 2012) (quoting *Wash. Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1280–81 (D.C. 1990)).

Here, there is no dispute that *Keister I* was a final, valid judgment on the merits by a court of competent jurisdiction. *See Middleton*, 318 F. Supp. 3d at 86–87. Thus, the Court focuses on whether *Keister I* and the instant case arise from a common nucleus of facts; and whether the parties in both cases are the same or are each other's privies. *Id.*

A. Common Nucleus of Facts

The Court must first determine whether the instant case involves the "same claims or cause[s] of action" as in *Keister I*. *See Middleton*, 318 F. Supp. 3d at 86. As an initial matter, the Court notes that the legal theories in *Keister I* and the instant case are not the same, as Plaintiff brought a claim of wrongful denial of benefits in *Keister I, see generally Keister I*, 410 F. Supp. 3d at 244, but he brings claims of misrepresentation and interference in the instant case, *see generally* Compl. But the applicability of claim preclusion hinges on causes of action, not legal theories. *See Coleman*, 310 F. Supp. 2d at 161. While the legal theories differ, Keister's claims in the instant case arise from the same circumstances as the claim in *Keister I*, as both cases pertain to the denial of Keister's claim for long-term disability benefits and the effect of the Severance Agreement on Keister's right to pursue such benefits.

Even a cursory examination of Keister's claims in each case reveals that the claims arise from the same "nucleus of common facts." *See Walker v. Seldman*, 471 F. Supp. 2d 106, 112 (D.D.C. 2007). Before the court in *Keister I*, Keister argued that "AARP representatives knew [his] benefits had been denied and did not inform him that he would need to file his appeal before executing his severance agreement." *See Keister I*, 410 F. Supp. 3d at 258 (quoting Plaintiff's Opposition to Aetna's Motion for Summary Judgment at 3). Keister also attempted to

7

introduce extrinsic evidence to show that he "may have been misled with regard to what he was signing." *See id.* at 257 (citation omitted). The *Keister I* court addressed the latter claim as follows:

> Keister's [argument that he may have been misled with regard to what he was signing] fails, for the very simple reason that Keister knowingly signed an agreement that *expressly states* that the written terms of the Release "constitute the entire agreement on the matters addressed" (Release ¶ 13), and that Keister has "not relied upon any representation or statement, written or oral, not set forth in this Agreement" (*id.* ¶ 14). Given this, Keister's present suggestion that the oral representations of AARP representatives regarding preservation of his ERISA claim suffice to support a finding that the written agreement itself was fraudulently induced cannot be accepted. Moreover and in any event, even if the Court considers the extrinsic communications between Keister and AARP's representatives, there is an insufficient factual basis upon which to conclude that any such fraud occurred.
>
> \* \* \*
>
> The thrust of Keister's contention that AARP's representatives made "misrepresentations" to Keister regarding his pending ERISA claim is that the representatives failed to make clear to Keister how the Release would affect his claim for long-term disability benefits. The proffered emails show that AARP's representatives made no affirmative misstatements about the impact of the Release on Keister's application and appeal rights under the long-term disability plan. . . . In other words, the statements that are made in the emails Keister points to are a far cry from AARP's representatives having made "a false representation . . . with knowledge of its falsity . . . [and] with the intent to deceive[.]"

*Keister I*, 410 F. Supp. 3d at 259–60 (emphasis and alterations in original) (internal citations omitted).

The foregoing analysis by the *Keister I* court relies on the same facts that Keister offers to support his misrepresentation claim in the instant case. Here, Keister alleges that "AARP representatives . . . misrepresented . . . the effect of the severance agreement," and that "[t]he misrepresentation was made knowing that AARP would consider [Keister's] rights . . . to have been waived." *See* Compl., ¶¶ 46–47. Keister further alleges that "AARP misled [him] knowing

8

his intentions to secure his benefits and without informing him how his rights would be negatively impacted if he signed the severance agreement, despite his numerous inquiries." *Id.*, ¶ 49. These factual allegations are essentially the same as the ones made in *Keister I*.[4]

Keister argues that his interference claim was not presented in *Keister I* because it relies on the conduct of human resources employees, while the court in *Keister I* instead focused on the language of the Severance Agreement. *See* Pl. Opp. at 4. With respect to the interference claim, Keister alleges that "AARP human resources representatives intentionally convinced [Keister] into signing the severance agreement;" and that "AARP human resource representatives intentionally interfered with [Keister's] rights." *See* Compl., ¶¶ 51–52.[5] These facts, however, are substantively identical to the facts presented *Keister I*, where Keister argued that he "may have been misled" by the very same AARP human resources employees. *See Keister I*, 410 F. Supp. 3d at 258 (rejecting Keister's argument that "AARP representatives knew Keister's benefits had been denied and did not inform him that he would need to file his appeal before executing his severance agreement"). Thus, Keister's apparent contention that the conduct of the AARP human resources employees was not addressed in *Keister I* is unconvincing.

---

[4] Keister argues that the misrepresentation claim was not adjudicated in *Keister I* because the court declined to allow him to amend his complaint in that case to allege misrepresentation. *See* Pl. Opp. at 3. But the above-quoted language from the *Keister I* opinion demonstrates that the court fully considered and addressed his allegations of misrepresentation, which was framed in that case as "fraud."
  Additionally, Keister spends considerable time in his Opposition attempting to relitigate that ruling and other issues in *Keister I*. *See* Pl. Opp. at 2–3. But it is not this Court's role to determine whether *Keister I* was correctly decided. *See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("[R]es judicata consequences . . . [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). This Court's task is merely to determine whether the allegations in the instant Complaint arise from the same nucleus of facts as those litigated in *Keister I*. In any event, the D.C. Circuit affirmed the judgment in *Keister I* and concluded that the trial court correctly ruled in favor of the defendants.

[5] Keister alleges that "[t]he conduct of the human resource representatives violate[d] ERISA, 29 U.S.C. § 1140 because AARP interfered with Plaintiff's rights to secure retiree *medical benefits*." *See* Compl., ¶ 53 (emphasis added). The court in *Keister I* discussed the distinction between disability benefits and medical benefits, *see Keister I,* 410 F. Supp. 3d at 254–56, in relation to the Severance Agreement, stating that "[t]he foregoing release shall not be deemed a waiver of any pension rights or medical benefits." *See* Severance Agreement, ¶ 3. Reading Keister's present argument in context, he appears to be referring to long-term disability benefits, and not medical benefits.

9

In sum, Keister's current claims involve the "same cause of action" as the one addressed in *Keister I*. *See Middleton*, 318 F. Supp. 3d at 86–87. His claims rely on the same underlying facts that the court in *Keister I* considered in resolving that case.

B. <u>Same Parties</u>

Claim preclusion applies where the parties in the prior proceeding and the instant one are the same or are each other's privies. *See Middleton*, 318 F. Supp. 3d at 86–87. *Keister I* was brought against AARP Benefits and Aetna, while the instant lawsuit is brought against AARP. Defendant argues that AARP Benefits is a privy of AARP, and therefore, the second element of claim preclusion is satisfied. *See* Def. Mot. at 9. Keister responds by arguing that AARP was not a named defendant in *Keister I*, and AARP Benefits and AARP are separate entities. *See* Pl. Opp. at 2–3.

Privies for the purpose of *res judicata* include parties that have a "substantive legal relationship between the person to be bound and a party to the judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). Moreover, "[a] privy is one so identified in interest with a party to the former litigation that [they] represent[] precisely the same legal right in respect to the subject matter of the case." *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989). Here, AARP Benefits is a wholly owned subsidiary of AARP, *see Keister I*, ECF No. 6 (Corporate Disclosure); and the two entities therefore have a substantive legal relationship. *See Keister I*, 410 F. Supp. 3d at 251 (concluding there is "no doubt that AARP Benefits is an affiliated and related entity of AARP."); *see also Peek v. SunTrust Bank, Inc.*, 313 F. Supp. 3d 201, 205 (D.D.C. 2018) (holding that defendant's status as a wholly-owned subsidiary made it apparent that the entities were each other's privies).[6] In addition, both AARP and AARP Benefits

---

[6] Furthermore, Keister "conceded" in the prior litigation "that AARP and AARP Benefits Committee are not unrelated." *Keister I*, 410 F. Supp. 3d at 251.

represent "the same legal right" with respect to the litigation of Keister's claim for long-term disability benefits. *See Smith*, 562 A.2d at 615.  Therefore, AARP is a privy of AARP Benefits.[7] Accordingly, all the elements of claim preclusion are met, and Keister's case is barred.

## II. Issue Preclusion

AARP advances an alternative argument that issue preclusion should prevent the current case from moving forward. *See* Def. Mot. at 12. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (2008) (citation and internal quotation marks omitted). Issue preclusion applies if an argument "is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised." *GSS Grp. Ltd. V. Nat'l Port. Auth. of Liberia*, 822 F.3d 598, 608 (D.C. Cir. 2016) (quoting *Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002)).

In order for issue preclusion to bar litigation in a subsequent case, (1) the same issue "must have been contested by the parties and submitted for judicial determination in the prior case;" (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction;" and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 16–17 (D.D.C. 2013) (citation omitted). The plaintiff must demonstrate that "he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Id.* at 17 (citation omitted).

---

[7] Plaintiff also argues that the instant action seeks relief from AARP as the plan sponsor, for the actions of its employees in carrying out the Severance Agreement. *See* Pl. Opp. at 3. This distinction does not change the fact that AARP and AARP Benefits have a "substantive legal relationship." *See Taylor*, 553 U.S. at 894.

As discussed, *supra*, Keister argued in *Keister I* that when he signed the Severance Agreement, he "may have been misled with regard to what he was signing." *Keister I*, 410 F. Supp. 3d at 257. The court in *Keister I* examined the Severance Agreement and found it "facially unambiguous" in barring Keister's claim. *Id.* at 257. The court nevertheless addressed the extrinsic evidence Keister proffered and found that that there was no evidence that AARP misrepresented what was in the Severance Agreement or otherwise misled Keister. *Id.* at 259 (stating that the AARP representatives made no affirmative misrepresentations, and that Keister's evidence was a "far cry from AARP's representatives having made 'a false representation. . . with knowledge of its falsity . . . [and] with the intent to deceive[.]'" (quoting *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 (D.D.C. 2016) (alterations in original)). Thus, the court in *Keister I* considered and rejected the argument that Keister was misled by AARP employees and that they wrongfully induced him to sign the Severance Agreement.[8] The issues surrounding Keister's interference and misrepresentation claims have already been determined by a court of competent jurisdiction.

The Court also is required to consider whether preclusion of the issues in the instant case would be unfair to Keister. *See Canonsburg*, 989 F. Supp. 2d at 17. AARP argues that Keister was afforded every opportunity to present his case in *Keister I,* and there is no evidence that Keister was procedurally, substantively, or otherwise prejudiced in *Keister I*. *See* Def. Mot. at 13–14. Keister argues that issue preclusion is not appropriate for his interference claim because he did not know he was being misled until AARP asserted that his claim for long-term benefits was barred. *See* Pl. Opp. at 6.

---

[8]  Plaintiff also argues that he has alleged sufficient facts establishing a breach of fiduciary duty. *See* Pl. Opp. at 5–6. This, however, is not relevant to the Court's analysis of whether Plaintiff's claims of misrepresentation and interference are barred by *res judicata*. In any event, Keister had the opportunity to bring a claim of breach of fiduciary duty in *Keister I,* and it appears that he did so. *See Keister I*, 410 F. Supp. 3d at 260.

The Court discerns no evidence of procedural or substantive unfairness. Keister had a full and fair opportunity to present his case to the court in *Keister I*; and he also had the benefit of appellate review. The instant facts present a textbook case for applying the doctrine of *res judicata*, which is intended to stop "repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 946. Because the court in *Keister I* already has addressed the issues raised in the instant case, it would be wasteful to allow Keister to relitigate those issues. Although Keister may be disappointed in the outcome of *Keister I*, it is not unfair to require him to abide by the court's ruling, which was affirmed by the D.C. Circuit. At bottom, the court in *Keister I* determined that Keister "knowingly signed" a contract that not only waived his right to sue, but also unequivocally precluded him from arguing that he was misled when he entered the agreement. *See Keister I*, 410 F. Supp. 3d at 259 (Severance Agreement provided "that the written terms of the Release constitute the entire agreement on the matters addressed;" and that Keister has "not relied upon any representation or statement, written or oral, not set forth in [the] Agreement."). It was Keister's responsibility to understand the agreement that he signed, the terms of which were very clear. On this record, it is not in the least bit unfair to require Keister to abide by the Agreement, and by the ruling in *Keister I*. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) ("[A] losing litigant deserves no rematch after a defeat fairly suffered.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court concludes that Keister's misrepresentation and interference claims are barred by claim preclusion and issue preclusion, under the doctrine of *res judicata*. The Court therefore will grant Defendant's Motion to Dismiss. A separate Order will issue this day.

_____
Florence Y. Pan
United States District Judge

Date: December 9, 2021